UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JEAN CLAUDE BOLOGNA and GHILDA T.
BOLOGNA,

                              Plaintiffs,

                   -against-                      **ORDER**
                                            20 CV 0955 (CLP)

MICHAEL A. WILSON and JEWELL
LEASING LLC,

                             Defendants.
----------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

       On January 21, 2020, plaintiffs Jean Claude Bologna and Ghilda T. Bologna commenced this action in New York Supreme Court, Queens County, alleging that on April 23, 2018, defendant Michael A. Wilson, the operator of a 2015 Peterbuilt motor vehicle, bearing Vermont state license plate number 77D76, leased from defendant Jewell Leasing, LLC, collided with plaintiffs' vehicle in the Westbound side of Interstate 495, the Long Island Expressway, near the intersection of 225th Street in Queens, N.Y. (Compl.[1] ¶¶ 23, 24-26). Plaintiffs allege that as a result of defendants' negligence, plaintiffs sustained serious and permanent injuries as defined by Section 5102 of the Insurance Law of the State of New York. (Id. ¶¶ 27, 30). The case was removed to this Court on March 10, 2020. (ECF No. 1).

       On October 31, 2023, defendants filed a motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, asserting that plaintiffs' alleged injuries do not satisfy the serious injury threshold requirements of New York Insurance Law §§ 5102(d) and 5104 (ECF No. 25). On August 17, 2024, this Court, having considered the medical records and

---

[1] Citations to "Compl." refer to the plaintiffs' Verified Complaint filed in State Supreme Court on January 1, 2020 (ECF No. 1-2).

1

various doctors' reports submitted by both parties, denied defendants' motion with prejudice as to Ms. Bologna, and without prejudice as to Mr. Bologna. (Order[2] at 29).

Currently pending before this Court is defendants' letter request, dated October 25, 2024, seeking permission to renew their motion for summary judgment (ECF No. 40). For the reasons set forth below, defendants' request to renew is denied.

## BACKGROUND

In their October 25, 2024 letter, defendants seek to renew their motion for summary judgment, arguing that plaintiffs should be precluded from relying on the proffered records and reports of Dr. Mark Gladstein, who defendants contend was not disclosed as either a fact or expert witness in accordance with the discovery deadlines set by the Court and was not actually identified until five months after the motion for summary judgment was filed. (ECF No. 40 at 1). Defendants now seek to have the Court disregard Dr. Gladstein's records and affidavit in reconsidering its decision on the motion for summary judgment, and, in the event that summary judgment is still denied, defendants seek an order precluding plaintiffs from offering his testimony and records at trial. (Id.)

Defendants first raised the issue of plaintiffs' failure to disclose Dr. Gladstein as a witness in the case in their reply brief to the summary judgment motion, dated April 30, 2024 (ECF No. 36). In the Court's Order on the motion for summary judgment, the Court gave plaintiffs until September 6, 2024, to provide further briefing on this issue and explain why they should be excused from compliance with the scheduling order and why they should not be precluded from calling Dr. Gladstein as a witness. (Order at 29). The Court gave defendants until September 20, 2024, to respond. (Id.)

---

[2] Citations to "Order" refer to this Court's Order on defendants' motion for summary judgment, entered on August 17, 2024 (ECF No. 38).

By letter dated September 6, 2024, plaintiffs contend that their failure to explicitly name Dr. Gladstein is "harmless." (ECF No. 39 at 1). They explain that on March 4, 2021, they provided defendants with authorizations for Dr. Gladstein's records, making it clear that he was a treating physician. (Id.) They contend that Dr. Gladstein has been known to defendants for over three years and therefore, preclusion of his records and testimony would be inappropriate. (Id.)

Although the Court afforded defendants until September 20, 2024 an opportunity to reply to plaintiffs' September 6, 2024 letter, they did not file a reply. Instead, in their October 25, 2024 letter request to renew their motion for summary judgment, they indicate that "Plaintiff failed to file any such additional briefing." (ECF No. 40). It is unclear whether defendants were not aware of plaintiffs' September 6, 2024 letter or just chose not to respond. In plaintiff's opposition to defendants' letter motion to renew dated October 25, 2024, plaintiffs contend that defendants' request to renew their motion for summary judgment is untimely and should have been filed by September 20, 2024, in accordance with the Court's Order. (ECF No. 41).

## DISCUSSION

### A. The Court's Order As To Ms. Bologna

Turning to defendants' request to renew their motion, the Court's earlier denial of summary judgment as to Ms. Bologna's claims was not based on any records or treatment provided by Dr. Gladstein. (Order at 21). In denying defendants' motion as to Ms. Bologna, the Court relied on the findings of Dr. Leven, Ms. Bologna's treating surgeon, who analyzed her MRI films, made certain findings during surgery, and conducted range of motion testing, demonstrating specific limitations in the range of motion of Ms. Bologna's cervical and lumbar spines. (Id.) The Court concluded that Ms. Bologna's doctor's findings had satisfied her burden sufficient to raise a triable issue of fact. (Id. (citing Assael v. Marth, 300 A.D.2d 329, 751 N.Y.S.2d 315 (2d Dep't 2002); Toure v. Avis Rent A Car Sys., 98 N.Y.2d 345, 746 N.Y.S.2d

3

865 (2002); Shtesl v. Kokoros, 56 A.D.3d 544, 867 N.Y.S.2d 492 (2d Dep't 2008))). Given that the Court found no issue with the plaintiffs' reliance on the records of Dr. Leven, the Court denied with prejudice defendants' motion for summary judgment as to Ms. Bologna. (See id. at 27-28).

      B.      The Court's Order As To Mr. Bologna

However, as Mr. Bologna's treating physician, Dr. Gladstein's records and findings formed the basis for the Court's determination that Mr. Bologna had raised material issues of fact as to whether he suffered a serious injury as a result of the accident, sufficient to warrant a trial. (Order at 24, 28-29). Specifically, in January 2024, Dr. Gladstein, through the use of a goniometer, found significant restrictions in the range of motion in Mr. Bologna's neck, back and left shoulder, which the doctor attributed to the accident of April 23, 2018. (Id. at 23-24). Combined with Dr. Gladstein's review of Mr. Bologna's MRIs, diagnostic testings, and record review, these range of motion findings led the doctor to conclude that Mr. Bologna suffers from severe and permanent injuries that cause him significant pain and restrict his daily living activities. (Id. at 24). Since Mr. Bologna did not offer any other medical experts in support of his claims, in the absence of Dr. Gladstein's records and testimony, Mr. Bologna's claims would lack sufficient support to challenge the findings of defendants' medical experts, and would require judgment in favor of defendants.

Thus, the Court considers whether plaintiffs' failure to name Dr. Gladstein as a fact or expert witness requires preclusion.

      C.      Legal Standard

It is clear that sanctions may be imposed upon a party or counsel who deliberately fails to comply with a court order. See, e.g., Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d 371, 386 (2d Cir. 1981) (explaining that "[a] federal district court possesses broad inherent

power to protect the administration of justice by levying sanctions in response to abusive litigation practices") (citing cases); see also Prelvukaj v. Naselli, No. 19 CV 5939, 2023 WL 3570659, at *4 (E.D.N.Y. May 18, 2023) (explaining that "'[w]hether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses, and for the spoliation of evidence'") (quoting Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 267 (2d Cir. 1999) (citations omitted)).  Rule 37 of the Federal Rules of Civil Procedure is the primary, though not the exclusive, mechanism for enforcing a court's discovery orders.  See, e.g., World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 158 (2d Cir. 2012) (explaining that "Federal Rule of Civil Procedure 37 governs the district court's procedures for enforcing discovery orders and imposing sanctions for misconduct").

Rule 37 provides in relevant part that "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders."  Fed. R. Civ. P. 37(b)(2)(A).  In Update Art, Inc. v. Modiin Publishing, Ltd., the Second Circuit described the three purposes behind sanctions under Rule 37:

> First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

843 F.2d 67, 71 (2d Cir. 1988) (citing National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639 (1976) (per curiam), and Cine Forty-Second St. Theatre Co. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979)); see also Southern New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 149 (2d Cir. 2010) (quoting the same provision from Update Art, Inc. v. Modiin Pub'g, Ltd., 843 F.2d at 71).  As the court in Baba v. Japan Travel Bureau

5

International, Inc., noted: "'[A]ll litigants . . . have an obligation to comply with court orders. When they flout that obligation[,] they . . . must suffer the consequences of their actions.'" 111 F.3d 2, 5 (2d Cir. 1997) (quoting McDonald v. Head Crim. Ct. Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988)).

An order requiring a party to comply with its discovery obligations or with another party's discovery requests is a necessary predicate to sanctions under Rule 37(b). See, e.g., Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir. 1991) (explaining that "[p]rovided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order"); see also Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, No. 16 CV 1318, 2017 WL 3671036, at *18 (S.D.N.Y. July 18, 2017) (noting that "[a] court order directing compliance with discovery requests is a required predicate to Rule 37(b) sanctions"). An order enforceable under Rule 37(b) need not, however, have been issued under a particular rule, so long as its effect was to require a party "to provide or permit discovery." See Fed. R. Civ. P. 37(b)(2)(A); Daval Steel Prods. v. M/V Fakredine, 951 F.2d at 1363-64. An order need not be written to be enforceable under the Rule. See Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d at 388 (citing cases); see also Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, 2017 WL 3671036, at *18 (explaining that "[t]he order disobeyed can take a variety of forms, and need not be written") (citing cases). Even in the absence of a court order, Rule 37(c) provides for sanctions where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1).

For violations of such an order or a discovery obligation, Rule 37 lists seven possible sanctions, including "striking pleadings in whole or in part," "rendering a default judgment

6

against the disobedient party," and "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A)(iii)(vi), (vii). In addition, the Rule provides that the court may issue an order that certain "designated facts be taken as established for purposes of the action, as the prevailing party claims," Fed. R. Civ. P. 37(b)(2)(A)(i); e.g., Prelvukaj v. Naselli, 2023 WL 3570659, at *7 (ordering that "an instruction be given at trial . . . that had the hours-of-service logs been produced, they would indicate that [defendant] drove more than eleven hours by the time of the alleged accident"), or the court may issue an order "prohibiting the disobedient party from . . . introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii); e.g., Figueroa v. W.M. Barr & Co., Inc., No. 18 CV 11187, 2020 WL 996473, at *4 (S.D.N.Y. Mar. 2, 2020) (precluding plaintiff from introducing or relying on an expert report in response to a summary judgment motion or at trial).

In lieu of or in addition to these sanctions, the Rule requires that the court order the disobedient party, its attorney, or both to pay "the reasonable expenses, including attorney's fees," caused by the failure to comply, unless the court finds the failure "substantially justified" or that "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Indeed, courts have awarded attorney's fees and costs where sanctions were appropriate but where the court found that the sanctioned party's conduct did not rise to a level that would warrant the more severe sanctions of dismissal or default. See Seena Int'l, Inc. v. One Step Up, Ltd., No. 15 CV 1095, 2016 WL 2865350, at *11 (S.D.N.Y. May 11, 2016) (explaining that with respect to discovery sanctions, "'the mildest' sanction 'is an order to reimburse the opposing party for expenses caused by the failure to cooperate'" and that "[m]onetary sanctions are the norm, not the exception," and ordering plaintiff to reimburse defendants' fees and expenses

7

incurred since the discovery deadline in getting plaintiff to produce documents) (quoting Cine Forty-Second St. Theatre Co. v. Allied Artists Pictures Corp., 602 F.2d at 1066).  Attorney's fees can be assessed against the non-compliant party or their counsel.  Roadway Express, Inc. v. Piper, 447 U.S. 752, 763-64 (1980) (holding "[b]oth parties and counsel may be held personally liable for expenses, 'including attorney's fees,' caused by the failure to comply with discovery orders"); see also Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, 2017 WL 3671036, at *20 (explaining that "[t]he [c]ourt has wide discretion to apportion Rule 37 monetary sanctions between a party and its counsel").

Rule 37's listed sanctions are non-exclusive, and the Rule explicitly contemplates that courts will order other sanctions so long as they are "'just'" and "'commensurate with the noncompliance.'"  See Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, 2017 WL 3671036, at *19, 21 (quoting Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007)).  "The court's inquiry in deciding whether to impose less severe sanctions, such as fines and cost-shifting, focuses primarily on the misconduct of the party to be sanctioned."  Trustees of Mosaic & Terrazzo Welfare, Pension, Annuity, & Vacation Funds v. Elite Terrazzo Flooring, Inc., No. 18 CV 1471, 2020 WL 1172635, at *6 (E.D.N.Y. Feb. 20, 2020), report and recommendation adopted, 2020 WL 1166616 (E.D.N.Y. Mar. 11, 2020).

In evaluating whether to impose more serious discovery sanctions, courts consider the following non-exclusive factors:  "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of noncompliance."  Bhagwanani v. Brown, 665 F. App'x 41, 42-43 (2d Cir. 2016) (summary order) (alteration in original) (quoting Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d

Cir. 2009)); see also Southern New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d at 144. Significant prejudice to the moving party may counsel for a harsher sanction, but a lack of prejudice to the moving party does not counsel against the imposition of a sanction. Trustees of Mosaic & Terrazzo Welfare, Pension, Annuity, & Vacation Funds v. Elite Terrazzo Flooring, Inc., 2020 WL 1172635, at *6. Courts "have consistently rejected the 'no harm, no foul standard' for evaluating discovery sanctions." Southern New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d at 148. Still, "'[t]he sanction of dismissal should not be imposed under Rule 37 unless the failure to comply with a pretrial production order is due to willfulness, bad faith, or any fault of the deponent.'" Mintz Fraade Law Firm, P.C. v. Brady, 19 CV 10236, 2021 WL 621206, at *3 (S.D.N.Y. Feb. 17, 2021) (alteration in original) (internal quotation marks omitted) (quoting Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d at 135).

    D.    Analysis

In analyzing whether the sanction of preclusion is warranted here, the Court first looks to whether there was a clearly articulated order of the Court requiring specified discovery that was violated in this case. The case was initially assigned to Magistrate Judge Steven Gold. On March 30, 2020, Judge Gold set an initial discovery schedule requiring the completion of fact discovery by October 30, 2020, and disclosure of plaintiffs' expert reports by November 30, 2020. (ECF No. 16). During a conference held on November 17, 2020, the judge extended the time for completion of fact discovery to February 1, 2021, with plaintiffs' expert reports due by March 1, 2021. (ECF No. 18).

On January 5, 2021, the case was reassigned to the undersigned, and on April 14, 2021, a new schedule was set in light of the surgery of one of the plaintiffs. (Minute Entry dated 4/14/2021). On October 6, 2021, the Court ordered production of authorizations for Ms. Bologna's then-recent surgery, and directed that independent medical examinations ("IMEs") be

9

scheduled for both plaintiffs. (Minute Entry dated 10/6/2021). On December 15, 2021, the Court Ordered plaintiff to provide additional authorizations for Mr. Bologna. (Minute Entry 12/15/2021). On that same date, the parties were referred to mediation and after two unsuccessful attempts at mediation, the parties returned to the Court on October 18, 2022, at which time the plaintiffs were given 60 days to submit their expert rebuttal reports. (Minute Entry 10/18/2022). On January 11, 2023, the Court again extended the time for the parties to complete expert discovery, with plaintiffs to depose defendants' experts and to "provide medical expert reports;" no specific date was set at that time. (Minute Entry 1/11/2023). Finally, on July 7, 2023, the Court set the briefing schedule for defendants' motion for summary judgment. (Minute Entry 7/7/2023).

Although it is clear that the parties were directed to complete fact discovery and identify and produce expert reports, the dates were extended numerous times due in part to additional surgeries, efforts at mediation, and general issues relating to COVID-19. Plaintiffs concede that they did not "explicitly name Dr. Mark Gladstein" as a fact witness, but they contend that authorizations for his records were provided to defendants on March 4, 2021[3] and thus, defendants knew of his existence for over three years prior to the filing of the motion for summary judgment. (ECF No. 39).

In considering the factors outline by the Second Circuit in Bhagwanani v. Brown, 665 F. App'x at 42-43, there seems to be no basis for finding that plaintiffs acted willfully in failing to name Dr. Gladstein as a witness; indeed, they disclosed his identity in providing an authorization for his records. Even considering plaintiffs' failure to "name" Dr. Gladstein as a witness to be a violation of the Court's discovery schedule, albeit amidst several deadline extensions and

---

[3] Dr. Gladstein first treated Mr. Bologna on July 14, 2020, and subsequently saw Mr. Bologna twice more: on March 28, 2023, and again on January 9, 2024. (ECF No. 32-2).

10

extenuating circumstances, the issue was not raised until the filing of the motion for summary judgment and thus, plaintiffs had not received any warning of the consequences of noncompliance.

Nor does the Court find that defendants have been subjected to significant prejudice, given that had they processed the authorization when received three years ago, they would have had sufficient notice that plaintiffs were likely to rely on Dr. Gladstein's records. By contrast, to preclude plaintiff from offering Dr. Gladstein's testimony would cause severe prejudice to Mr. Bologna, whose claims would likely be dismissed in their entirety. Most important, however, is that there are lesser sanctions that can be imposed that are more commensurate with counsel's noncompliance.

Accordingly, the Court denies defendants' request to renew their motion for summary judgment. The Court further denies defendants' request to preclude plaintiffs from offering Dr. Gladstein's testimony at trial. However, if defendants wish at this time to depose Dr. Gladstein, plaintiffs' counsel is Ordered to provide defendants with suggested dates for the doctor's deposition and plaintiffs are Ordered to pay the doctor's fee for the deposition. Plaintiffs are also Ordered to pay for defendants' counsel's time in preparing the October 25, 2024 letter seeking to renew the motion for summary judgment.

## CONCLUSION

For the reasons set forth above, defendants' motion to renew their motion for summary judgment is denied. Plaintiffs are Ordered to pay for defense counsel's time incurred in preparing the October 25, 2024 letter motion. Defendants are directed to file documentation in support of their fees by November 15, 2024; any objection to be filed by November 22, 2024. If defendants wish to depose Dr. Gladstein, the parties are directed to schedule a time for his

11

deposition, and plaintiffs are Ordered to pay for the doctor's fees for the deposition. Dr. Gladstein's deposition, if any, shall be completed by **January 17, 2025**.

The parties shall confer to submit a proposed pre-trial order in accordance with the undersigned's Individual Rules. Plaintiffs' draft pre-trial order shall be served by December 13, 2024. Defendants' draft pre-trial order shall be served by January 20, 2025. The parties' final proposed Joint Pre-Trial Order shall be filed by February 3, 2025.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
November 6, 2024

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York