UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JEAN CLAUDE BOLOGNA, GHILDA T.
BOLOGNA

                            Plaintiffs,

                -against-

MICHAEL A. WILSON, JEWELL
LEASING, LLC

                        Defendants.
-----------------------------------------------------------X

**OPINION AND ORDER**
20 CV 955 (CLP)

**POLLAK**, United States Magistrate Judge:

       In advance of trial in this car accident case, plaintiffs Jean Claude Bologna and Ghilda T.

Bologna ("plaintiffs") filed a motion *in limine* challenging defendants Michael A. Wilson and

Jewell Leasing, LLC's ("defendants") proposed introduction of evidence, testimony, and

references related to plaintiffs' prior insurance claims, workers' compensation claims, and prior

accidents.  Defendants have filed a motion under <u>Daubert v. Merrell Dow Pharm.</u>, 509 U.S. 579

(1993), seeking to preclude the testimony of plaintiffs' expert witness, Dr. James Pugh.

       For the following reasons, plaintiffs' motion *in limine* is granted in part, denied in part,

and reserved in part.  Defendants' <u>Daubert</u> motion is granted in part and denied in part.

BACKGROUND

**I. Factual and Procedural History**

       On January 21, 2020, plaintiffs commenced this action in New York State Supreme

Court, alleging that defendant Wilson, while driving a vehicle leased from defendant Jewell

Leasing, LLC, collided with plaintiffs' vehicle on the Long Island Expressway on April 23,

1

2018.  (Compl.[1] ¶¶ 23-26).  Plaintiffs allege that defendants' negligence caused plaintiffs serious and permanent injuries as defined by Section 5102 of the Insurance Law of the State of New York.  (Id. ¶¶ 27-30).  The case was removed to this Court on February 24, 2020.  (ECF No. 1). The parties consented to magistrate judge jurisdiction on March 31, 2020 (ECF Nos. 12, 13), and the case was reassigned to the undersigned on January 5, 2021.  (Docket Entry, dated January 5, 2021).

On October 31, 2023, defendants filed a motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, asserting that plaintiffs' alleged injuries do not satisfy the serious injury requirement under New York Insurance Law §§ 5102(d) and 5104.  (ECF No. 25).  On August 17, 2024, this Court denied defendants' motion for summary judgment with prejudice as to Ms. Bologna and without prejudice as to Mr. Bologna.  (ECF No. 38).[2]  Plaintiffs were directed to respond to concerns raised by defendants relating to the non-disclosure of Mr. Bologna's physician, Dr. Gladstein; plaintiffs responded by letter on September 6, 2024.  (ECF No. 39).  Rather than file a reply to plaintiffs' letter by the September 20, 2024 deadline set by the Court, defendants instead submitted a letter request on October 25, 2024 seeking permission to renew their motion for summary judgment.  (ECF No. 40).  That motion was denied on November 6, 2024.  (ECF No. 42).

Following an unsuccessful attempt at settlement negotiations, the Court scheduled the final pretrial conference for October 14, 2025.  (Electronic Order, dated June 30, 2025).  On July 21, 2025, plaintiffs filed the instant motion *in limine* presently before the Court (ECF No. 50, Plaintiff's First Motion in Limine to Exclude Any Mention of Prior Claims).  Defendants filed a

---

[1] Citations to "Compl." refer to Plaintiffs' Verified Complaint filed in New York State Supreme Court on January 1, 2020 (ECF No. 1-2).

[2] Citations to "Order" refer to this Court's Order on Defendants' motion for summary judgment, entered on August 17, 2024 (ECF No. 38).

memorandum of law in opposition (ECF No. 52), and plaintiffs filed a reply on August 11, 2025

(ECF No. 54).  On July 21, 2025, defendants filed a separate motion *in limine*, pursuant to

Daubert.  (ECF No. 51, Motion in Limine by Jewell Leasing, LLC, Michael A. Wilson).

Plaintiffs filed their opposition to defendants' Daubert motion on August 4, 2025 (ECF No. 53).[3]

Trial is scheduled to begin on October 20, 2025. The Court assumes the parties'

familiarity with the underlying facts of the instant case.

DISCUSSION

**II. Plaintiffs' Motion *in Limine***

A.  Standards

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on

the admissibility and relevance of certain forecasted evidence.  Luce v. United States, 469 U.S.

38, 40 n.2 (1984); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (same); Nat'l Union Fire

Ins. Co. v. L.E. Myers Co. Grp., 937 F. Supp. 276, 283 (S.D.N.Y. 1996) (same).  "Evidence

should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all

potential grounds."  United States v. Paredes, 176 F. Supp. 2d 179, 181 (S.D.N.Y.2001).  Indeed,

courts considering a motion *in limine* may reserve decision until trial, so that the motion is

placed in the appropriate factual context.  See Nat'l Union Fire Ins. Co., 937 F. Supp. at 287.

Further, the court's ruling regarding a motion *in limine* is "subject to change when the case

unfolds, particularly if the actual testimony differs from what was [expected]."  Luce, 469 U.S. at

41.

---

[3] Defendants moved for leave to a file a response on August 12, 2025 (ECF No. 55). The Court granted defendants' motion to file a reply to plaintiffs' opposition against their Daubert motion, but it appears defendants have chosen not to do so.

Pursuant to Federal Rule of Evidence 401, evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence" and that fact "is of consequence in determining the action."  Fed. R. Evid. 401.  Federal Rule of Evidence 403 authorizes a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

B.  The Parties' Arguments

Plaintiffs seek to exclude "any evidence, testimony, or reference to Plaintiffs' prior insurance claims, workers' compensation claims, and prior accidents."  (ECF No. 50 at 1).  Plaintiffs state that defendants have requested No-Fault Files for both Ms. Bologna and Mr. Bologna for claims submitted between 2001 and 2019.  (Id. at 2).  Plaintiffs object to the introduction of this evidence, maintaining that "[n]one of these prior claims involve injuries to the same or similar body parts as those claimed by Plaintiffs in the present case" and therefore "has minimal . . . probative value."  (Id.)  They argue that the presentation of this evidence would unfairly cast plaintiffs in an overly litigious light and should be excluded under Rule 403 for its prejudicial effect on the jury.  (Id. at 2-3).  Furthermore, plaintiffs argue that this evidence would "likely confuse the issues and mislead the jury by shifting focus away from the injuries sustained in the April 23, 2018, accident," which are at issue in this litigation.  (Id. at 3).

Defendants argue that evidence discovered to date does not comport with plaintiffs' assertion that these prior claims did not involve injuries to similar body parts.  (ECF No. 52 at 4).  Defendants provide a summary of findings regarding seven claims related to Ms. Bologna and twelve claims related to Mr. Bologna, which includes the April 23, 2018 collision.  (Id. at 2-3).  Three of the claims with respect to both Mr. Bologna and Ms. Bologna appear to concern a rear

4

end accident.  In particular, the April 1, 2019 claim states that "[m]edical records indicate neck and back injury" for Mr. Bologna and that Ms. Bologna's treatment related to that accident "include[d] chiropractic" care.  (Id.)  Defendants state that they intend to marshal this evidence in order to attack "Plaintiffs' credibility" during cross examination under Federal Rule of Evidence 611(b).  (Id. at 4-5).

In short, defendants wish to "issue trial subpoenas to all of the providers . . . to establish that Plaintiffs were not entirely truthful when they denied related injuries, and to establish that the claimed injuries are not related to the subject accident."  (Id. at 9).  In reply, plaintiffs argue that defendants cannot establish that these prior claims meet the "substantial similarity" requirement to be relevant to the disputed issues of causation and damages.  (ECF No. 54 at 3). Further, plaintiffs argue that admission of such evidence would improperly establish plaintiffs' propensity for litigation and confuse the jury.  (Id. at 3-4).

C.  Analysis

One of the central questions to be determined at trial is the causal connection between the accident and plaintiffs' injuries.  Under Rule 404, evidence of preexisting injuries stemming from prior accidents or events is relevant to determining whether the claimed injuries in this case were in fact caused by the accident at issue.  The fact that plaintiffs may have filed prior insurance claims and workers' compensation claims is not relevant to this case nor should it be proffered to show that plaintiffs are overly litigious.  As the court in Napolitano v. Synthes, Inc., stated:  "While evidence of prior lawsuits is generally not permitted 'for the purpose of demonstrating that a plaintiff is a 'chronic litigant,' . . . the Second Circuit has held that evidence of a prior lawsuit can be admitted to 'show a possible cause of [plaintiff's] injury unrelated to the

acts of the defendant.'"  No 09 CV 828, 2014 WL 12868859, at *2 (D. Conn. May 2, 2014) (citing <u>Brewer v. Jones</u>, 222 Fed. App'x. 69, 70 (2d Cir. 2007)).

Indeed, plaintiffs cite a Second Circuit case holding that "[e]vidence of prior accidents may be admitted at trial only if the proponent establishes their relevance by showing that they occurred under the same or substantially similar circumstances as the accident at issue."  ECF No. 54 at 2 (citing <u>Lidle v. Cirrus Design Corp.</u>, 505 Fed. App'x 72, 74 (2d Cir. 2012). Defendants' submissions suggest that some of the prior accidents meet this substantial similarity threshold, such as the rear end accidents on February 21, 2007, October 26, 2016, and April 1, 2019.  (ECF No. 52 at 2-3).

Thus, to the extent that defendants seek to offer evidence related to the prior insurance and workers compensations claims filed by plaintiffs to suggest that they are frequent filers of lawsuits, the Court grants plaintiffs' motion to exclude such evidence and testimony.  However, to the extent that defendants can establish that plaintiffs were involved in prior accidents similar in nature to the collision at issue in this litigation and offer evidence of injuries suffered in the prior incidents that suggest that the currently claimed injuries may be preexisting, they will be allowed to produce evidence related to the prior claimed injuries and question plaintiffs about any similar accidents.  Given the limited facts provided in this briefing, the Court reserves ruling on the admissibility of the evidence that defendants seek to offer from plaintiffs' previous accidents pending a proffer from defendants as to the specific areas of inquiry that defendants seek to explore and for what purpose.

### III. Defendants' Daubert Motion

Defendants bring a motion under <u>Daubert v. Merrell Dow Pharmaceuticals.</u>, 509 U.S. 579 (1993), seeking to exclude the testimony of plaintiffs' biomechanics expert, Dr. Pugh. (ECF No. 51).

### A.  The Admissibility of Expert Testimony

The standards governing the admissibility of expert testimony are set forth in Rule 702 of the Federal Rules of Evidence, and are further clarified by <u>Daubert v. Merrell Dow Pharm.</u>, 509 U.S. 579 (1993), and <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137 (1999). Federal Rule of Evidence 702 permits the admission of expert testimony as long as:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "The fundamental requirements are thus that such evidence be relevant and reliable."  <u>United States v. Jones</u> 965 F.3d 149, 161 (2d Cir. 2020) (<u>citing Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. at 587-92; <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. at 152.

In <u>Daubert</u>, the Supreme Court held that the trial judge is responsible for "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  509 U.S. at 597.  Thus, "[w]hile the proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied, . . . the district court is the ultimate gatekeeper." <u>Jones</u>, 965 F.3d at 161.  To assist with the task of determining the reliability of expert testimony, <u>Daubert</u> provides the trial court with five non-exclusive factors to apply to the expert's reasoning or methodology:  (1) "whether the theory or technique can be (and has been) tested"; (2) "whether the theory or technique has

been subjected to peer review and publication;" (3) the technique's "known or potential rate of error;" (4) "the existence and maintenance of standards controlling the technique's operation," and (5) whether the technique is "generally accepted" in the relevant scientific community. Daubert, 509 U.S. at 593-94. These factors do not constitute a "definitive checklist or test"; rather, "the inquiry envisioned by Rule 702 is . . . a flexible one." (Id.) "A district court's gatekeeping function applies not only to scientific opinion, but also to the opinions of other experts," and the Daubert factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Auto. Ins. Co. of Hartford, Connecticut v. Electrolux Home Prod., Inc., No. 10 CV 0011, 2012 WL 6629238, at *2 (S.D.N.Y. Dec. 20, 2012) (citation omitted).

As the Second Circuit has recognized, the inquiry under Daubert is limited, and "[a] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002). Rather, "[t]he judge should only exclude the evidence if the flaw is large enough that the expert lacks good grounds for his or her conclusions." (Id. at 266-67) (citation omitted). "This limitation on when evidence should be excluded accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." (Id. at 267). "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (Id. (citation omitted)). At bottom, the Daubert analysis is intended to give the district court the discretion "needed to ensure that the courtroom door remains closed to junk science while admitting reliable expert testimony that will assist the trier of fact." (Id.)

8

B.  Waiver of Objections

As a preliminary matter, plaintiffs argue that defendants have waived any objections they

may raise against Dr. Pugh because they did not contest his expert report at summary judgment.

Courts in this circuit have found that Daubert arguments were waived when not raised against an

expert at the summary judgment stage.  See United States v. Teva Pharms. USA, Inc., No. 13 CV

3702, 2019 WL 1245656, at *12 (S.D.N.Y. Feb. 27, 2019) (finding that "the Parties have waived

any Daubert arguments by not raising them at summary judgment"). In other words, "[i]f I can

consider an expert[] at summary judgment, a jury can consider it at trial."  (Id.)  This weighs

against excluding Dr. Pugh's testimony and expert report.

C.  Dr. Pugh's Qualifications

Although defendants may have waived any challenges to Dr. Pugh by not raising them

earlier, the Court has nonetheless reviewed the substantive arguments raised by defendants in

seeking to preclude Dr. Pugh as a witness.  First, defendants challenge Dr. Pugh's qualifications

as an expert and argue that his claimed area of expertise is impermissibly broad as he has "held

himself out as an expert in a number of different fields," ranging from the safety of a vehicle's

automatic door to the lack of handrails on a staircase.  (ECF No. 51-9 at 5-7).  Defendants also

point to a number of similar cases, most notably Hernandez v. Leichliter, No. 14 CV 5500, 2016

WL 684038, at *1 (S.D.N.Y. Feb. 18, 2016), where a court precluded Dr. Pugh's expert

testimony.  (ECF No. 51-9 at 7-8).

In response, plaintiffs argue that defendants' citation to other cases is misplaced as the

admissibility of expert testimony is case-specific, and that Dr. Pugh's qualifications are well-

suited to the subject matter of his testimony.  (See ECF No. 53 at 10)  Pointing to the general

practice of allowing biomechanical experts to opine on the general causation of injuries in motor

vehicle cases, plaintiffs argue that Dr. Pugh's report meets the "liberal standard of admissibility for expert opinions." (Id. at 8-9). Indeed, other courts in this circuit have admitted Dr. Pugh's testimony in cases involving car accidents. See Guild v. Gen. Motors Corp., 53 F. Supp. 2d 363, 369 (W.D.N.Y. 1999); Lappe v. Am. Honda Motor Co., 857 F. Supp. 222, 227 (N.D.N.Y. 1994); Monteagudo v. United States, No. 21-2770, 2022 WL 17684574 (2d Cir. Dec. 15, 2022).

Defendants rely on Hernandez v. Leichliter, where the district court found Dr. Pugh's testimony to be inadmissible on several grounds. 2016 WL 684038, at *2-3. In that case, Dr. Pugh was retained to testify on the causation of a plaintiff's injuries following a car accident on the George Washington Bridge. (Id.) Like this case, Dr. Pugh's report in Hernandez opined on "whether the accident was sufficiently severe to have caused Plaintiff's injuries." (Id. at *2). The district judge found that Dr. Pugh's causation determination was an inadmissible recasting of the plaintiff's testimony because it was "based not on an independent accident reconstruction analysis, but on Plaintiffs deposition testimony." (Id.) Reviewing Dr. Pugh's expert report in this case and his deposition transcript, where he similarly relies on plaintiffs' deposition in the preparation of his report, the Court agrees with the analysis in Hernandez and finds that it would be inappropriate for Dr. Pugh to testify as to who was at fault in the accident given the materials that he relied on in crafting the report. Therefore, to the extent that he intends to testify as to "the causation of the subject accident" or opine that the accident was "caused by driver error on the part of the defendant driver . . . failing to be alert" (ECF No. 51-2 at 5), the Court will preclude that testimony.

The court in the Hernandez case also found that Dr. Pugh's biomechanical analysis was deficient under Rule 702 and Daubert. Specifically, the court observed that Dr. Pugh failed to include exact calculations in his expert report nor did he provide calculations when requested,

raising questions about the basis of his analysis. 2016 WL 684038, at *3. By contrast, the severity of the collision at issue in this case does not appear to be in dispute. Indeed, defendants' expert Dr. Thibault relies in his analysis on a calculated "delta-v" of approximately 6.3 miles per hour when analyzing the impact sustained by plaintiffs (ECF No. 51-4 at 7), and Dr. Pugh "basically agree[d]" with this assessment of force. (ECF No. 51-2 at 5). Thus, the issue surrounding the force of the accident in Hernandez is not present here. The factual dispute in this case is whether an impact of this severity could possibly result in the claimed injuries. Furthermore, the court in Hernandez expressed concern that Dr. Pugh cited only one authority in support of his analysis—"SAE Paper Number 930889"—and that he questioned the soundness of that paper's methodology. However, unlike the report in Hernandez, Dr. Pugh references eight additional studies beyond "SAE Paper Number 930889" in the instant case. Indeed, his analysis and criticism of "SAE Paper Number 930889" serves to emphasize how even low forces can result in injury. Analyzing the report, Dr. Pugh contends that there was a "predisposition" of the authors and test subjects in that paper to produce a negative result—that low delta-v forces do not produce injury—and yet "three of the four test subjects reported cervical spine pain after the test series." (ECF No. 51-2 at 6-7). Finally, in the Hernandez report there was an indication that Dr. Pugh's report had been copied and pasted from a previous report: there were passing references in the expert report to vehicles and individuals not at issue in the Hernandez at litigation. See 2016 WL 684038, at *3. Here, there is nothing to suggest that Dr. Pugh's report was copied from a prior report, but rather that it was specifically drafted in response to the facts of Mr. Bologna and Ms. Bologna's accident, and the analysis of defendants' experts Dr. Emolo and Dr. Thibault.

Having reviewed Dr. Pugh's report in this case, the Court finds that the concerns raised in Hernandez do not apply here.  2016 WL 684038, at *2-3.  Reviewing Dr. Pugh's qualifications and curriculum vitae, the Court finds that he is qualified to testify as to the biomechanical causation of plaintiffs' injuries following the car accident at issue.

      D.   Admissibility of Dr. Pugh's Testimony under Rule 702

In addition to citing court findings in other cases relating to Dr. Pugh, defendants argue that his testimony is not be admissible under Rule 702.

First, Defendants argue that Dr. Pugh's opinion was not based on sufficient facts or data because he did not visit the site of the alleged accident, relied on photographs of the plaintiffs' vehicle in preparation of his report, raised the issue of twisting torsos as contributing to the severity of plaintiffs' injuries even though plaintiffs did not testify as to experiencing twisting motions during the collision, and provides no basis for why he does not believe the subject accident was not a minor impact.  (See ECF 51-9 at 8-10).  In response, plaintiffs argue that Dr. Pugh's opinion was based on sufficient facts and data and that even though plaintiffs did not "testify about twisting torsos" in their depositions, human anatomy always results in a "twisting motion" during forward and backwards motions of the spine.  (ECF No. 53 at 11).  Furthermore, plaintiffs argue that the factual basis for Dr. Pugh's conclusion that the "subject accident was not a minor impact" was his previous "[a]nalysis of hundreds of these accidents."  (Id. at 10-11).

Dr. Pugh's analysis of the accident appears grounded in facts and data even though he did not personally visit the site of the alleged accident or view plaintiffs' car in person.  "Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. at 592.  Furthermore, Dr. Pugh acknowledged in his deposition that plaintiffs did not

testify as to their torsos twisting at impact but explains that there are twisting motions associated with natural curvatures of the spine, which he factored into his analysis of injury potential. (ECF No. 51-3 at 38-39). To defendants' argument that Dr. Pugh improperly characterized the accident as "not a minor impact," "[e]xpert testimony may be based on 'experience alone—or experience in conjunction with other knowledge, skill, training or education.'" In re Mirena IUD Prods. Liab. Litig., 169 F. Supp. 3d 396, 413 (S.D.N.Y. 2016) (citing Fed. R. Evid. 702 Advisory Committee's Note). Notwithstanding Dr. Pugh's representation that he has "driven routinely through the area of the accident" (ECF No. 51-2 at 1), the limitations posed by his method of analysis and the facts he relied on in that analysis may "affect the weight to be afforded [Dr. Pugh's] testimony rather than its admissibility." Laureano v. City of New York, No. 17 CV 181, 2021 WL 3272002, at *4 (S.D.N.Y. July 30, 2021) (quotations omitted and alterations adopted). Defendants are free to explore any limitations and weaknesses in the factual foundations of Dr. Pugh's analysis on cross-examination.

Second, defendants argue that Dr. Pugh's opinion was not the product of reliable principles and methods because he does not provide a basis for the distance plaintiffs' vehicle was displaced following the impact. (ECF No. 51-9 at 10). Defendants also argue that Dr. Pugh mischaracterizes the studies he cites. (Id. at 11-12). In their reply, plaintiffs argue that Dr. Pugh's methodology was reliable because it is based on well-established biomechanical principles and peer-reviewed studies.

Having reviewed Dr. Pugh's report and his citations to the Nolet and Davis studies, the Court finds that his anticipated testimony concerning those studies does not reflect an unreliable principle or method. Courts have found that there is a "general utility of biomechanics analysis" relying on "calculations based on Newtonian physics" for purposes of determining "injury

causation in cases involv[ing] car crashes, falls, and other applications of force to the human body." Laureano v. City of New York, 2021 WL 3272002, at *4. Finally, to the final Rule 702 factor, the Court finds that Dr. Pugh's testimony as to the biomechanical forces associated with a car accident concern issues beyond the understanding of the average juror and may assist the jury in coming to a factual determination.

Finally, defendants argue that it would be improper to consider Dr. Pugh's conclusion that plaintiffs would not have needed surgeries and medical treatment but for the accident because Dr. Pugh is not a medical doctor and is therefore not qualified to make such assertions. (ECF 51-9 at 12). Previously at summary judgment, the Court found that the opinion of defendants' biomechanical expert Dr. Thibault lacked foundational medical support as to "specific injury causation" because he was not a medical doctor and not licensed to practice medicine. (See ECF No. 38 at 25-26). Per the reasoning in this previous order regarding defendants' biomechanical expert, the Court finds that it would be equally improper to allow Dr. Pugh to testify as to the specific causation of Plaintiffs' injuries and need for surgery. See ECF No. 38 at 26 (finding that "in the absence of medical training, a biomechanical expert is not permitted to render an opinion as to specific injury causation" (collecting cases)); see also Actava TV, Inc. v. Joint Stock Co. "Channel One Russia Worldwide", No. 18 CV 06626, 2023 WL 2529115, at *6 (S.D.N.Y. Mar. 15, 2023) (holding that an expert may testify as to the issue of causation but cannot testify as to liability). Dr. Pugh may properly testify as to how the accident at issue in this case *could* result in the injuries claimed.

Reviewing defendants' Daubert motion, the expert report, and Dr. Pugh's deposition transcript, the Court will allow Dr. Pugh to testify for the purpose of explaining how the forces associated with the collision could result in injuries similar to those sustained by Plaintiffs. The

portions of Dr. Pugh's testimony that would concern general causation of the accident—such as driver fault—and the necessity of plaintiffs' surgeries following the accident are not admissible.

E.  Sworn Declaration

Defendants also argue that Dr. Pugh's testimony should be precluded in its entirety because his report does not meet mandatory requirements of 28 U.S.C. § 1746 because it is unsworn.  (ECF No. 51-9 at 5).  Courts in this Circuit have found that expert reports that do not have a declaration pursuant to 28 U.S.C. § 1746 on the pages of the report itself are inadmissible hearsay.  See Condoleo v. Guangzhou Jindo Container Co., 427 F. Supp. 3d 316, 322 (E.D.N.Y. 2019) (finding that declaration only applied to separately paginated curriculum vitae instead of expert report itself).  However, courts have regularly recognized that a failure to submit sworn expert statements can be cured by later submission of affidavits or valid declarations verifying the report's contents.  See Glowczenski v. Taser Int'l Inc., No. 04 CV 4052, 2010 WL 1957289, at *4 n.1 (E.D.N.Y. May 13, 2010) (citing Cornell Rsch. Found., Inc. v. Hewlett-Packard Co., No. 501 CV 1974, 2007 WL 4349135, at *19 (N.D.N.Y. Jan. 31, 2007) (collecting cases)).

In light of the Court's determination that there are portions of Dr. Pugh's anticipated testimony that would be admissible at trial, plaintiffs are Ordered to submit a revised expert report, with the appropriate sworn declaration, in accordance with 28 U.S.C. § 1746.

CONCLUSION

For the reasons above, plaintiffs' motion to limit defendants' introduction of evidence related to previous accidents involving plaintiffs is granted in part, denied in part, and reserved in part.  While "rejection of expert testimony is the exception rather than the rule," Floyd v. City of New York, 861 F. Supp. 2d 274, 287 (S.D.N.Y. 2012), defendants' motion to exclude the testimony of Dr. Pugh is granted in part and denied in part.

**SO ORDERED.**

Dated: Brooklyn, New York
      October 1, 2025

                                            /s/ Cheryl L. Pollak
                                            Cheryl L. Pollak
                                            United States Magistrate Judge
                                            Eastern District of New York